OPINION
{¶ 1} Appellant, J.B., appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, finding him delinquent for committing the crimes of child endangering and murder. Appellant also appeals the juvenile court's decision imposing a serious youthful offender dispositional sentence. We affirm the juvenile court's delinquency determination as well as its decision imposing a serious youthful offender dispositional sentence.
 {¶ 2} In June 2003, appellant's mother left her apartment, leaving appellant in charge of his four younger siblings. Appellant was 13 years old at the time. His siblings were ages ten years, three years, two years, and 13 months. While their mother was gone, appellant and his siblings were to clean two bedrooms, prepare dinner, and bathe. At some point after dinner, appellant called his ten-year-old brother, A.B., and told him that something was wrong with their 13-month-old brother, J.R. When it was apparent that J.R. was not breathing, appellant performed mouth-to-mouth resuscitation. A.B. subsequently administered chest compressions. J.R. was not responsive. Appellant and A.B. looked for the phone, but could not find it. Appellant then brought J.R. to the couch in a blanket, where the children prayed as they waited for their mother to return.
 {¶ 3} The children's mother eventually arrived home with her boyfriend. At that time, J.B. told his mother that J.R. had fallen down the stairs. After examining J.R., appellant's mother called 9-1-1. Emergency personnel soon arrived, and transported J.R. to the hospital via ambulance. Appellant's mother rode in the ambulance to the hospital, while the police transported appellant and his other siblings to the police station. J.R. subsequently died at the hospital.
 {¶ 4} Detective Hayes of the Hamilton Police Department spoke with the children at the police station. Because appellant was the oldest child, Detective Hayes interviewed him first. According to Detective Hayes, appellant was not suspected of a crime at that time. Appellant initially told Detective Hayes that J.R. had fallen down the stairs. Detective Hayes questioned the veracity of that statement, and informed appellant that J.R. had died. Appellant then cried and said that he was sorry. Appellant told Detective Hayes that he struck J.R. with a metal bar, and choked J.R. around the neck. After appellant made those statements, Detective Hayes read appellant his Miranda rights. Appellant subsequently waived his Miranda rights and signed a statement consistent with his oral statements.
 {¶ 5} Later in June 2003, two complaints were filed against appellant in juvenile court, one alleging delinquency for committing domestic violence, and the other alleging delinquency for committing murder. Appellant entered a plea of "not true" to both allegations. The court appointed appellant an attorney as well as a guardian ad litem.
 {¶ 6} In July 2003, a Butler County grand jury indicted appellant for one count of child endangering and one count of murder. The grand jury found appellant age-eligible for disposition as a "serious youthful offender." Appellant entered a plea of "not true" to the allegations, and filed a motion in the juvenile court to dismiss the indictment. Appellant argued that the state had not complied with the procedures for initiating a serious youthful offender prosecution, and had violated his due process rights. The juvenile court denied appellant's motion.
 {¶ 7} Pursuant to a court order, appellant underwent two competency evaluations. One evaluator found appellant incompetent to stand trial, while another evaluator found appellant competent to stand trial. The court held a hearing where it heard testimony from both evaluators, as well as argument from the parties. After denying appellant's motion for a third competency evaluation, the juvenile court found appellant competent to stand trial.
 {¶ 8} Appellant filed a motion to suppress in February 2004, arguing that the court should exclude his statements to Detective Hayes. After a hearing, the court denied appellant's motion.
 {¶ 9} The court held a three-day jury trial in June 2004. After hearing the evidence, including the testimony of the Butler County Coroner, the jury returned a verdict of guilty on both the child endangering count and the murder count.
 {¶ 10} In August 2004, the juvenile court held a dispositional hearing. After hearing from various witnesses, the court ordered appellant to be committed to the Department of Youth Services ("DYS") until he reached the age of 21. Pursuant to R.C. 2152.13, the court also ordered a serious youthful offender dispositional sentence. The court ordered concurrent sentences of 15 years to life for murder, and two years for child endangering. The court stayed the serious youthful offender portion of appellant's sentence, pending appellant's successful completion of his juvenile sentence.
 {¶ 11} Appellant now appeals, assigning 11 errors.
 {¶ 12} Assignment of Error No. 1:
 {¶ 13} "THE JUVENILE COURT VIOLATED R.C. 2152.021, R.C.2152.13, AND J.B.'S RIGHT TO DUE PROCESS UNDER THE FIFTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION WHEN IT OVERRULED THE DEFENSE MOTION TO DISMISS THE INDICTMENT."
 {¶ 14} In this assignment of error, appellant argues that the juvenile court violated R.C. 2152.021, R.C. 2152.13, and appellant's due process rights when it denied his motion to dismiss the grand jury's indictment. Appellant argues that because the state initiated the case by a complaint and not a grand jury indictment, the state was subject to certain statutory requirements, which it did not satisfy.
 {¶ 15} As a question of law, we review the juvenile court's denial of appellant's motion to dismiss the indictment under a de novo standard of review. See State v. Mobus, Butler App. No. CA2005-01-004, 2005-Ohio-6164, ¶ 25. De novo review is an independent review, without deference to the lower court's decision. See State v. Amore, Lorain App. No. 03 CA 008281, 2004-Ohio-958, ¶ 6.
 {¶ 16} R.C. 2152.021 sets forth the ways that the state can initiate "serious youthful offender" proceedings. R.C.2152.021(A)(1) provides in relevant part as follows:
 {¶ 17} "If a child appears to be a delinquent child who is eligible for a serious youthful offender dispositional sentence under section 2152.11 * * * and if the prosecuting attorney desires to seek a serious youthful offender dispositional sentence under section 2152.13 * * *, the prosecuting attorney of the county in which the alleged delinquency occurs may initiate a case in the juvenile court of the county by presenting the case to a grand jury for indictment, by charging the child in a bill of information as a serious youthful offender pursuant to section2152.13 * * *, by requesting a serious youthful offender dispositional sentence in the original complaint alleging that the child is a delinquent child, or by filing with the juvenile court a written notice of intent to seek a serious youthful offender dispositional sentence."
 {¶ 18} R.C. 2152.13 governs the juvenile court's authority to impose a serious youthful offender dispositional sentence. R.C.2152.13(A) states that a juvenile court may impose a serious youthful offender dispositional sentence "only if the prosecuting attorney * * * initiates the process against the child in accordance with this division, and the child is an alleged delinquent child who is eligible for the dispositional sentence." The statute mirrors R.C. 2152.021(A)(1) in again setting forth the ways by which the prosecutor can initiate the sentencing process, though it adds further requirements under certain circumstances. R.C. 2152.13(A) provides as follows:
 {¶ 19} "The prosecuting attorney may initiate the process in any of the following ways:
 {¶ 20} "(1) Obtaining an indictment of the child as a serious youthful offender;
 {¶ 21} "(2) The child waives the right to indictment, charging the child in a bill of information as a serious youthful offender;
 {¶ 22} "(3) Until an indictment or information is obtained, requesting a serious youthful offender dispositional sentence in the original complaint alleging that the child is a delinquent child;
 {¶ 23} "(4) Until an indictment or information is obtained, if the original complaint does not request a serious youthful offender dispositional sentence, filing with the juvenile court a written notice of intent to seek a serious youthful offender dispositional sentence within twenty days after the later of the following, unless the time is extended by the juvenile court for good cause shown:
 {¶ 24} "(a) The date of the child's first juvenile court hearing regarding the complaint;
 {¶ 25} "(b) The date the juvenile court determines not to transfer the case under section 2152.12 of the Revised Code."
 {¶ 26} Appellant argues that because the state filed complaints in juvenile court prior to obtaining an indictment, the state was required to initiate serious youthful offender proceedings as prescribed in R.C. 2152.13(A)(3) and (4). Because the state did not request a serious youthful offender dispositional sentence in the complaints pursuant to R.C.2152.13(A)(3), or file a timely notice of its intent to do so pursuant to R.C. 2152.13(A)(4), appellant argues that the juvenile court should have dismissed the indictment.
 {¶ 27} We disagree with appellant's argument because the plain language of R.C. 2152.021 and R.C. 2152.13 dictate otherwise. R.C. 2152.021 and R.C. 2152.13 grant prosecutors the discretion to initiate serious youthful offender proceedings in four ways: via a grand jury indictment, a bill of information, a complaint, or a written notice of intent. The prosecutor in this case opted to initiate serious youthful offender proceedings under R.C. 2152.13(A)(1) by obtaining an indictment. Because the prosecutor obtained an indictment under R.C. 2152.13(A)(1), R.C.2152.13(A)(3) and (4) were not applicable. The prosecutor simply opted not to initiate serious youthful offender proceedings under those sections. Contrary to appellant's argument, nothing in R.C.2152.021 or R.C. 2152.13 prohibits a prosecutor from initiating serious youthful offender proceedings via an indictment when a complaint has previously been filed. Based on the plain language of R.C. 2152.021 and R.C. 2152.13, the juvenile court did not err in denying appellant's motion to dismiss the indictment.
 {¶ 28} Appellant also argues that the juvenile court violated his due process rights under the United States and Ohio Constitutions by denying his motion to dismiss the indictment. In making that argument, appellant correctly notes that constitutional due process guarantees apply to juveniles as well as adults. See Bellotti v. Baird (1979), 443 U.S. 622, 633-634,99 S.Ct. 3035. Accordingly, state juvenile court proceedings must measure up to essentials of fair treatment guaranteed by the Due Process clause of the Fourteenth Amendment. Id.
 {¶ 29} We do not find that the juvenile court violated appellant's due process rights by denying his motion to dismiss the indictment. We find nothing fundamentally unfair about the procedure followed by the court in this case. It is apparent from the record that appellant was afforded ample notice of the state's intention to pursue a serious youthful offender dispositional sentence. Appellant was indicted as age-eligible for a serious youthful offender dispositional sentence in July 2003. The incident that led to the indictment occurred in June 2003, at which time the initial complaints were filed. The court held appellant's trial in June 2004, and the dispositional hearing in August 2004. Appellant had an ample amount of time to prepare a defense to the delinquency allegations, and to develop arguments regarding a serious youthful offender dispositional sentence. Based on our review of the record, there was no due process violation.
 {¶ 30} Accordingly, we overrule appellant's first assignment of error. The juvenile court's denial of appellant's motion to dismiss the indictment did not violate R.C. 2152.021, R.C.2152.13, or appellant's due process rights.
 {¶ 31} Assignment of Error No. 2:
 {¶ 32} "J.B. WAS DENIED HIS RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION IN THAT HE WAS FOUND GUILTY OF CHILD ENDANGERING AND MURDER WHEN HE WAS INCOMPETENT TO STAND TRIAL."
 {¶ 33} In this assignment of error, appellant argues that the juvenile court committed three errors regarding the issue of appellant's competency to stand trial. First, appellant argues that the court erred in denying his request for a third competency examination. Second, appellant argues that the court erred in assessing his competency under juvenile norms, rather than adult norms. Third, appellant argues that the court erred in determining that he was competent to stand trial.
 {¶ 34} We first address the court's denial of appellant's motion for a third competency evaluation. With a few narrow exceptions, R.C. 2152.13(C)(2) states that all provisions of Title 29 of the Revised Code and the Criminal Rules apply to the case of a child for whom a serious youthful offender dispositional sentence is sought. According to that section, "[t]he juvenile court shall afford the child all rights afforded a person who is prosecuted for committing a crime including * * * the right to raise the issue of competency."
 {¶ 35} R.C. 2945.371(A) states that the court "may order one or more evaluations of the defendant's present mental condition" if the defendant raises the issue of competency. The number of evaluations to be ordered "is left to the sound discretion of the trial court." State v. Duncan (Sept. 12, 2001), Medina App. No. 3117-M, 2001 WL 1044206, *6, citing State v. Hix (1988),38 Ohio St.3d 129, 131. Accordingly, an appellate court will not reverse a trial court's decision regarding the number of competency evaluations ordered absent an abuse of discretion.State v. Nelson (May 9, 2001), Medina App. No. 3103-M, 2001 WL 490016, *1. An abuse of discretion is not merely an error of law; it implies that the court's attitude was arbitrary, unreasonable, or unconscionable. State v. Adams (1980), 62 Ohio St.2d 151,157.
 {¶ 36} After reviewing the record, we do not find that the juvenile court abused its discretion in denying appellant's motion for a third competency evaluation. It is undisputed that the two experts who evaluated appellant, Dr. Bobbi Hopes and Dr. Charles Lee, were well-qualified. Further, it is apparent from the experts' reports and testimony that they thoroughly interviewed appellant and analyzed his competency to stand trial. Both experts gave detailed testimony at the competency hearing, and were thoroughly questioned by the parties and the court. There was some conflict in the experts' assessments. However, it was not necessary for the court to obtain a majority of experts in favor of competency or incompetency. The relevant question was whether there was sufficient evidence before the court for it to make a well-informed decision regarding appellant's competency. Based on the reports and testimony of Dr. Hopes and Dr. Lee, there was sufficient evidence. Therefore, we find no abuse of discretion.
 {¶ 37} Because appellant did not object to the standard used by the juvenile court to evaluate appellant's competency, we will review that issue for plain error. In order to find plain error, a reviewing court must determine that: (1) there was error; (2) the error was "plain," meaning that there was an obvious defect in the trial proceedings; and (3) the error affected substantial rights, meaning that the error affected the outcome of the trial.State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68. Even if the above three prongs are met, a reviewing court still has discretion in determining whether to correct the lower court's error. Id. at 27. Courts should notice plain errors "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long
(1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 38} The Revised Code does not set forth a standard for determining a juvenile's competency. This court has held that the standard in R.C. 2945.37 for assessing an adult's competency governs a juvenile's competency determination, as long as that standard is applied in light of juvenile norms, not adult norms.In re Stone, Clinton App. No. CA2002-09-035, 2003-Ohio-3071, ¶ 7; In re McWhorter (Dec. 5, 1994), Butler App. No. CA94-02-047, 1994 WL 673098, *2.
 {¶ 39} Appellant argues that because the serious youthful offender statutes treat him as an adult by subjecting him to adult punishment, the juvenile court should have applied the adult competency standard in light of adult norms. Appellant asserts that the juvenile court's failure to apply that standard amounts to plain error.
 {¶ 40} Consistent with In re Stone and In re McWhorter,
we find that the adult standard applied in light of juvenile norms is the proper standard for a court to apply to a juvenile's competency determination in the serious youthful offender context. While the serious youthful offender statutes treat juveniles as adults in many respects, the primary purposes for juvenile dispositions still applies. Those purposes are "to provide for the care, protection, and mental and physical development of children * * *, protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." R.C.2152.01(A). Applying a standard that takes into account juvenile norms is most consistent with those purposes. Accordingly, we do not find plain error or any error by the juvenile court in applying the adult competency standard in light of juvenile norms.
 {¶ 41} We now review whether the court's competency determination under R.C. 2945.37(G) was erroneous. R.C.2945.37(G) states as follows:
 {¶ 42} "A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial[.]"
 {¶ 43} An appellate court will not disturb a competency determination if there was "some reliable, credible evidence supporting the trial court's conclusion." In re Stone,
2003-Ohio-3071, at ¶ 9, quoting State v. Williams (1986),23 Ohio St.3d 16, 19. Further, "the adequacy of the data relied upon by the expert who examined the [defendant] is a question for the trier of fact." Id.
 {¶ 44} The assessments of Dr. Hopes and Dr. Lee were similar in many regards. Both experts determined that appellant was not mentally ill or mentally retarded. They found that his overall IQ was in the 80s, placing him in the "low average" range of intellectual functioning. Both experts determined that appellant understood the nature and the objectives of the proceedings against him, and that he understood the concepts of innocence and guilt.
 {¶ 45} However, unlike Dr. Lee, Dr. Hopes found that appellant's reasoning and judgment abilities were so severely impaired that he was not capable of assisting in his defense. For that reason, she determined that he was incompetent to stand trial. Dr. Hopes based her determination in part on appellant's low scores on verbal subtests of his IQ test designed to measure reasoning and judgment abilities. She found that while appellant's motor skills, perceptual ability, and rogue memory were good, his verbal learning skills were poor. Dr. Hopes also noted language difficulties, testifying that Spanish appeared to be appellant's primary language. According to Dr. Hopes, appellant told her that when his lawyer spoke, he pretended to understand him, even though he did not. Further, Dr. Hopes found that appellant was blindly obedient to his mother, and would likely lie to protect her or adults in her life. Dr. Hopes found that appellant's willingness and motivation to defend himself were "questionable."
 {¶ 46} Unlike Dr. Hopes, Dr. Lee testified that he saw no resistance in appellant toward defending himself. Dr. Lee found that appellant could reasonably assist his defense attorney, and that he was aware of "what could be detrimental to him." Dr. Lee determined that appellant had a good ability to recall recent events, and that his memory was not impaired. Dr. Lee also testified that appellant was fluent in both English and Spanish, and, while appellant was not as "fast with English," he did not have "a significant language problem." Dr. Lee found that appellant had the ability to understand legal advice if presented to him in a clear, concise, and simple manner. Further, according to Dr. Lee, appellant's mother never "came into play" in assessing appellant's ability and willingness to defend himself. According to Dr. Lee, because appellant was capable of understanding the nature and objectives of the legal proceedings, and assisting in his defense, he was competent to stand trial.
 {¶ 47} We find no error in the juvenile court's decision that appellant was competent to stand trial. The court's decision is supported by reliable, credible evidence in the record. Specifically, the court's decision is supported by the report and testimony of Dr. Lee. The court simply found the testimony and report of Dr. Lee more persuasive than the testimony and report of Dr. Hopes. The court thought that Dr. Hopes' analysis relied too heavily on perceived language difficulties. The court found more persuasive Dr. Lee's testimony that appellant did not have "a significant language problem," and that he was capable of assisting his lawyer. Based on a thorough review of the record, we find no error in the court's decision. See State v. Young,
Cuyahoga App. No. 80059, 2003-Ohio-272, ¶ 12 (court's competency determination supported by sufficient credible evidence where court found one expert more persuasive than another).
 {¶ 48} Appellant correctly points out that the conviction of an accused who is incompetent is a violation of due process. SeeState v. Rubenstein (1987), 40 Ohio App.3d 57, 60. Because we find no error in the court's denial of appellant's motion for a third expert, the standard the court used, or the court's competency determination, we find no due process violation. Accordingly, we overrule appellant's second assignment of error.
 {¶ 49} Assignment of Error No. 3:
 {¶ 50} "THE JUVENILE COURT ERRED WHEN IT DENIED J.B.'S MOTION TO SUPPRESS THE STATEMENTS HE MADE DURING A CUSTODIAL INTERROGATION BECAUSE THOSE STATEMENTS WERE ELICITED IN VIOLATION OF HIS CONSTITUTION [SIC] RIGHT AGAINST SELF-INCRIMINATION."
 {¶ 51} In this assignment of error, appellant argues that the juvenile court should have granted his motion to suppress statements he made to Detective Hayes at the police station. Appellant argues that because Detective Hayes did not give himMiranda warnings before appellant made his oral statement, that statement should be inadmissible. Further, appellant argues that because he did not voluntarily waive his Miranda rights, the subsequent written statement should also be inadmissible. Finally, appellant argues that even if there was no Miranda
violation, his statements should still be inadmissible because they were "unreliable."
 {¶ 52} When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. See State v. Mills (1992),62 Ohio St.3d 357, 366. Accordingly, when reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's findings of fact if they are supported by competent, credible evidence. State v. McNamara (1997),124 Ohio App.3d 706, 710. However, an appellate court reviews de novo whether the trial court's conclusions of law, based on those findings of fact, are correct. State v. Anderson (1995),100 Ohio App.3d 688, 691.
 {¶ 53} It is well-established that the duty to advise a suspect of constitutional rights pursuant to Miranda v. Arizona
(1966), 384 U.S. 436, 86 S.Ct. 1602, arises only when questioning by law enforcement officers rises to the level of a custodial interrogation. State v. Gumm, 73 Ohio St.3d 413, 429,1995-Ohio-24. In Miranda, the court described custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."Miranda at 444. In determining whether an individual is in custody, the ultimate inquiry is whether there was a formal arrest or a "restraint on freedom of movement of the degree associated with a formal arrest." California v. Beheler (1983),463 U.S. 1121, 1125, 103 S.Ct. 3517.
 {¶ 54} Where a suspect has not been formally arrested, "the restraint on the suspect's freedom of movement must be significant in order to constitute custody." State v. Coleman,
Butler App. No. CA2001-10-241, 2002-Ohio-2068, ¶ 23. Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. Statev. Fille, Clermont App. No. CA20010-8-066, 2002-Ohio-3879, ¶ 18. However, a noncustodial situation is not converted into a custodial situation simply because questioning takes place in a police station. Id., citing Oregon v. Mathiason (1977),429 U.S. 492, 495, 97 S.Ct. 711. Whether a person is in custody forMiranda purposes depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned. Stansburyv. California (1994), 511 U.S. 318, 323-324, 114 S.Ct. 1526.
 {¶ 55} At the motion to suppress hearing, Detective Hayes described his interview of appellant. At about 1:00 a.m. on June 17, 2003, Detective Hayes was called to investigate the death of the victim that had occurred in the late evening of June 16, 2003. After going to the apartment where the death took place, Detective Hayes arrived at the Hamilton police station. Because appellant's mother accompanied the victim to the hospital, Hamilton police officers had transported appellant and his siblings to the police station for their safety. In order to determine what had occurred, Detective Hayes decided to interview appellant and his siblings. Because appellant was the oldest child, Detective Hayes interviewed him first. Detective Hayes testified that he did not consider appellant a suspect at that time. While appellant was being interviewed, his siblings sat in chairs by the front desk of the station.
 {¶ 56} Detective Hayes conducted the interview at his desk in one of the investigation sections. Detective Hayes sat behind his desk while appellant sat in a chair on the other side of the desk. Five other desks were in the room, one for each of the other detectives in the section. None of those detectives were present at the time. Detective Hayes testified that he did not restrict appellant in any way. He offered appellant food, but appellant refused. Appellant never asked to use the restroom, nor did he ever ask for a break. Detective Hayes testified that he would have allowed appellant to use the restroom had he asked.
 {¶ 57} Detective Hayes began the interview, which commenced at 2:20 a.m., with ten minutes of "rapport building." Appellant soon informed Detective Hayes that the victim had fallen down the stairs. Because Detective Hayes had been to the apartment where appellant lived and seen only five or six stairs at the most, he did not believe such a fall could have caused the victim's injuries. When Detective Hayes told appellant that he did not believe him, appellant reiterated his story. Being unsure that appellant knew of the victim's death, Detective Hayes told appellant that fact. At that point, appellant began crying, saying he was sorry for what he had done. When Detective Hayes asked appellant what he was sorry for, appellant began a narrative in which he confessed to harming the victim. Appellant told Detective Hayes that he struck the victim with a metal bar, and that he choked the victim "around the neck" when the victim would not stop crying. Detective Hayes testified that appellant finished his narrative by 3:00 a.m., approximately 40 minutes after the interview commenced.
 {¶ 58} Once appellant confessed to harming the victim, Detective Hayes read appellant his Miranda rights. Appellant subsequently signed a document in which he waived his Miranda
rights, and another document reiterating his oral confession. Appellant's contact with Detective Hayes ended by 4:00 a.m. At that time, Hamilton police officers transported appellant to a juvenile detention facility.
 {¶ 59} After thoroughly reviewing the record, we find that appellant was not "in custody" for Miranda purposes at the time he made his initial, oral statement to Detective Hayes. Appellant was not under formal arrest nor was there a restraint on appellant's freedom of movement "of the degree associated with a formal arrest." Beheler, 463 U.S. at 1125. At the time of the interview, appellant was at the police station for his protection and because of his status as a potential witness. The record shows no restrictive elements to the interview. The interview did not take place in an interrogation room, but at a desk. Detective Hayes' testimony, which the juvenile court must have found credible, shows that he was attempting to obtain information from appellant about the incident. Detective Hayes did not place appellant in custody as defined in Miranda until after appellant gave his confessional narrative.
 {¶ 60} Detective Hayes did testify that appellant would not have been "free to go" prior to making his oral statement, but simply because the department would not release a 13 year old to the high crime area where the station was located without an adult to care for him. Detective Hayes made clear in his testimony that appellant "was free to stop speaking" to him. After reviewing the transcript of the suppression hearing, this court does not find that appellant was subjected to the restraint associated with a formal arrest. Therefore, the juvenile court properly denied appellant's motion to suppress the oral statement.
 {¶ 61} We now address appellant's argument that the court should have suppressed his written statement because appellant did not voluntarily waive his Miranda rights. In determining whether appellant voluntarily waived his Miranda rights, we consider "the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." State v. Green, 90 Ohio St.3d 352, 366,2000-Ohio-182.
 {¶ 62} Detective Hayes testified that he read appellant'sMiranda rights to him, and reviewed each individual right with him in detail. Detective Hayes also testified that he and appellant discussed the meaning of individual terms in theMiranda warnings such as "court" and "lawyer." Detective Hayes explained the right to remain silent by telling appellant he could "stop talking * * * whenever he wants." According to Detective Hayes, appellant acknowledged that he understood what Detective Hayes meant. Detective Hayes testified that he did not have any concerns about appellant's English language abilities. Appellant told Detective Hayes that he wanted to talk, signed a written waiver of his Miranda rights, and signed a written statement consistent with his previous oral statement.
 {¶ 63} Dr. Hopes testified for the defense at the suppression hearing. She testified that appellant did not have the ability to comprehend all of his Miranda rights. According to Dr. Hopes, appellant could understand the concept of being entitled to a lawyer, and that what he said could be told to a judge. However, Dr. Hopes testified that appellant was not capable of understanding what it meant for his statements to be "used against him."
 {¶ 64} With respect to the test set forth in Green,90 Ohio St.3d at 366, the record shows no evidence of physical deprivation, mistreatment, or the existence of threat or inducement. The record also does not show that the interview of appellant was of a great length. Appellant was 13 years old at the time of the interview. With respect to law enforcement contact, appellant had been arrested once before, and had spoken to a police sergeant once on the telephone. With respect to appellant's mentality, his overall IQ was in the low-average range. As to other relevant circumstances, appellant was under the emotional stress of having just learned that his baby brother died.
 {¶ 65} Based on the totality of the circumstances, we find that appellant's waiver of his Miranda rights was voluntary. As stated above, there is no evidence of physical deprivation, mistreatment, or improper coercion. Further, the length, intensity, and frequency of the interrogation were not great. Additionally, Detective Hayes' testimony shows that he carefully explained to appellant in simple terms the Miranda rights he was waiving, and that appellant stated he understood those rights. The record does not support the conclusion that appellant's age and mentality prevented him from understanding the rights he was waiving. As Dr. Hopes testified, appellant may not have been capable of understanding all the nuances of hisMiranda rights. However, under the totality of the circumstances, we find that appellant could understand the rights he was waiving. His waiver was therefore voluntary. Accordingly, the juvenile court did not err in failing to suppress appellant's written statement.
 {¶ 66} Appellant also argues that the juvenile court should have suppressed his inculpatory statements to Detective Hayes because those statements were "unreliable." Appellant does not cite any case law in support of that argument. Further, because the argument was not raised below, we review the issue only for plain error. Crim.R. 52(B).
 {¶ 67} Having reviewed the record, we do not find support for appellant's argument that the statements were "unreliable" and therefore inadmissible. While appellant was undoubtedly under some emotional distress due to the death of his baby brother, the totality of the circumstances surrounding the giving of the statements does not indicate that the statements were unreliable as a matter of law. We note that appellant was free to and did argue to the jury the issue of the confession's reliability, in other words, the weight to be attributed to the confession in the overall assessment of the evidence. See State v. Hubbard (Nov. 16, 1992), Butler App. No. CA92-03-058, 1992 WL 333642, *4. Accordingly, we do not find plain error or any error with respect to the reliability of the statements.
 {¶ 68} Having addressed all of appellant's arguments under his third assignment of error, we overrule that assignment of error. The use of appellant's statements in court did not violate his right against self-incrimination.
 {¶ 69} Assignment of Error No. 4:
 {¶ 70} "THE TRIAL COURT VIOLATED J.B.'S RIGHT OF DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION, AND JUV.R. 29(E)(4) WHEN IT ADJUDICATED HIM DELINQUENT OF CHILD ENDANGERING AND MURDER ABSENT PROOF OF EVERY ELEMENT OF THE CHARGE AGAINST HIM BY SUFFICIENT, COMPETENT, AND CREDIBLE EVIDENCE."
 {¶ 71} Appellant's sole contention under this assignment of error is that the state failed to prove that he acted recklessly with respect to the child endangering count. Appellant argues that because the state presented insufficient evidence of child endangering, there was also insufficient evidence of murder because proof of the child endangering count was necessary for proof of the murder count.[1]
 {¶ 72} When an appellate court reviews a claim that a conviction is not supported by sufficient evidence, its inquiry focuses upon the adequacy of the evidence. State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52. The relevant question is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 73} Appellant was indicted for child endangering under R.C. 2919.22(B)(1). That section provides that "[n]o person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age: (1) Abuse the child[.]" Because the statute does not specify a mental state and does not indicate an intent to impose strict liability, the mental state of "recklessly" applies. R.C.2901.21(B). A person acts "recklessly" when, "with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).
 {¶ 74} According to Detective Hayes' testimony, appellant told Detective Hayes that he hit the victim in the back with a metal bar. Appellant also told Detective Hayes that he choked the victim by putting his hands around the victim's neck. In his written statement, appellant stated that he struck the victim with the metal bar, causing a bruise on the victim's back, and that he did it "on purpose." In his written statement, appellant also stated that he grabbed the victim "by the front of the neck" until the victim stopped crying. Dr. Richard Burkhardt, the Butler County Coroner, testified that the victim had many contusions on his body, including multiple, recent contusions on his back. Further, Dr. Burkhardt testified that there was an injury to the victim's neck strap muscle. J.B.'s brother, A.B., testified that there were not bruises on the victim's back when he and his siblings were eating dinner earlier in the evening.
 {¶ 75} Based on the above evidence in the record, we find sufficient evidence that appellant acted "recklessly" in abusing the victim. Specifically, we note appellant's written statement that he struck the victim with the metal bar "on purpose." See R.C. 2901.22(E) ("When recklessness suffices to establish an element of an offense, then knowledge or purpose is also sufficient culpability for such element.") Accordingly, we overrule appellant's fourth assignment of error.
 {¶ 76} Assignment of Error No. 5:
 {¶ 77} "THE TRIAL COURT VIOLATED J.B.'S RIGHT TO DUE PROCESS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION WHEN IT ADJUDICATED HIM DELINQUENT OF CHILD ENDANGERING AND MURDER, WHEN THAT FINDING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 78} In this assignment of error, appellant argues that the juvenile court's delinquency finding based on the commission of child endangering and murder was against the manifest weight of the evidence. According to appellant, the weight of the evidence shows that improper chest compressions performed by J.B.'s brother, A.B., was the cause of the victim's death, not physical abuse by appellant.
 {¶ 79} A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. Thompkins,78 Ohio St.3d at 387. The reviewing court must consider the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a miscarriage of justice that the conviction must be reversed and a new trial ordered. See id. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. See Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 80} With respect to the child endangering count, the state presented substantial evidence indicating that appellant recklessly abused a child under the age of 18. As we discussed under appellant's fourth assignment of error, Detective Hayes testified that appellant orally confessed to hitting the 13-month-old victim in the back with a metal bar, and choking the victim. The state offered a written statement in which appellant made similar statements, indicating that he hit the victim with the metal bar "on purpose." Further, Dr. Burkhardt testified that the victim had many contusions on his body, including multiple, recent contusions on his back. A.B. testified that there were no bruises on the victim's back earlier in the evening.
 {¶ 81} Appellant did not present significant evidence to counter the state's evidence with regard to child endangering. Accordingly, the juvenile court's finding of delinquency based on the commission of child endangering was not against the manifest weight of the evidence. The jury did not clearly lose its way and create a miscarriage of justice.
 {¶ 82} As to the murder count, the indictment alleged that appellant violated R.C. 2903.02(B). That section provides as follows: "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or2903.04 of the Revised Code."
 {¶ 83} We have already determined that the delinquency finding for child endangering, a second-degree felony, was supported by sufficient evidence and was not against the manifest weight of the evidence. Therefore, the question with regard to the murder count is whether the evidence showed that appellant caused the victim's death "as a proximate result" of his commission of child endangering.
 {¶ 84} As previously stated, Detective Hayes testified that appellant confessed orally and in writing to hitting the victim in the back with a metal bar, and choking the victim. In addition to the contusions on the victim's back, Dr. Burkhardt testified that the victim had contusions on his chin, lip, chest, groin, hip, wrist, arm, abdomen, and the top of his head. The victim had abrasions in the rib area. Further, Dr. Burkhardt testified that the victim had internal bleeding in his mesentery, the tissue that connects the bowel to the spinal cord. Dr. Burkhardt testified that the bleeding was likely caused by blunt trauma to the abdomen. Dr. Burkhardt determined that the fatal injury was a ruptured atrium caused by a "tremendous amount of force" applied to the chest. According to Dr. Burkhardt, the victim's death was a homicide.
 {¶ 85} As previously stated, A.B. testified that he had not seen bruises on the victim at dinner earlier in the evening, and that he saw the bruises for the first time when J.B. called him. A.B. also testified that appellant told him to tell the authorities that they both killed the victim.
 {¶ 86} On cross-examination, Dr. Burkhardt testified that it was "possible" for the fatal injury to have occurred as a result of an inexperienced person administering chest compressions. Such a possibility did not change Dr. Burkhardt's opinion that the death was a homicide. As appellant points out, A.B. testified that he was the only one who gave the victim chest compressions. A.B. testified that he softly pressed the victim's chest with his hands.
 {¶ 87} We do not find that the juvenile court's delinquency finding based on the commission of murder was against the manifest weight of the evidence. Based on appellant's oral and written confessions to physically abusing the victim, Dr. Burkhardt's testimony regarding the multitude of injuries to the victim's body, and A.B.'s testimony, the jury could properly infer that appellant's physical abuse of the victim caused the victim's death. The jury could properly infer that it was appellant who applied the "tremendous amount of force" that ruptured the victim's atrium. Though Dr. Burkhardt testified that it was "possible" for the fatal injury to have occurred as a result of chest compressions, A.B.'s testimony that he softly pressed the victim's chest, if believed, rendered that possibility unlikely. We find that the jury did not clearly lose its way and create a miscarriage of justice. Accordingly, we overrule appellant's fifth assignment of error.
 {¶ 88} Assignment of Error No. 6:
 {¶ 89} "THE CUMULATIVE EFFECT OF ERRORS RESULTED IN THE DENIAL OF J.B.'S RIGHT TO DUE PROCESS AND A FAIR TRIAL AS GUARANTEED BY THE UNITED STATES AND OHIO CONSTITUTIONS."
 {¶ 90} In this assignment of error, appellant raises 14 alleged errors. Appellant argues that while each of those alleged errors alone does not amount to reversible error, the "cumulative effect" of those alleged errors requires a reversal of the juvenile court's delinquency findings.
 {¶ 91} Pursuant to the cumulative error doctrine, a reviewing court will reverse a conviction where "the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of [the] numerous instances of trial court error does not individually constitute cause for reversal." State v. Garner, 74 Ohio St.3d 49, 64,1995-Ohio-168. The cumulative error doctrine only applies where the trial court committed multiple, harmless errors. See id.
 {¶ 92} We have reviewed the record in relation to each of the 14 errors alleged by appellant. In the interest of judicial economy, we will not address each of those alleged errors individually. Because we do not find that any of the alleged errors were errors, we overrule appellant's sixth assignment of error.
 {¶ 93} Assignment of Error No. 7:
 {¶ 94} "J.B. WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTIONS 10 AND16 OF THE OHIO CONSTITUTION."
 {¶ 95} In this assignment of error, appellant argues that his counsel was ineffective. Specifically, appellant argues that his counsel failed to object at various stages of the proceedings, failed to request a competency evaluation under the adult standard, failed to make an adequate record during voir dire, failed to call any defense witnesses, and failed to ensure that written jury instructions were included in the record.
 {¶ 96} In order to establish ineffective assistance of counsel, appellant must show that his trial attorney's performance was both deficient and prejudicial. Strickland v.Washington (1984), 466 U.S. 668, 687, 104 S.Ct. 2052; State v.Bradley (1989), 42 Ohio St.3d 136, 141-142. With respect to deficiency, appellant must show that his counsel's performance "fell below an objective standard of reasonableness."Strickland at 688. Appellant must also overcome the presumption that the challenged action might be considered sound trial strategy. Id. at 689. With respect to prejudice, appellant must show that there is a reasonable probability that, but for his counsel's unprofessional errors, the outcome of the proceeding would have been different. Id. at 694.
 {¶ 97} Appellant argues that his trial counsel should have objected to the juvenile court's denial of his motion to dismiss the indictment, the court's denial of his request for a third competency evaluation, the court's competency finding, and the court's denial of his motion to suppress. However, appellant's trial counsel preserved all of the above issues for review. We have addressed in previous assignments of error the court's denial of the motion to dismiss the indictment, the denial of the request for a third competency evaluation, the court's competency determination, and the court's denial of the motion to suppress. Therefore, appellant has demonstrated no prejudice as a result of his trial counsel's failure to lodge objections.
 {¶ 98} With regard to the failure of appellant's trial counsel to request a competency evaluation using the adult standard, appellant has also failed to demonstrate prejudice. In our discussion of appellant's second assignment of error, we rejected appellant's argument that the court should have applied a strict adult standard. We determined that the juvenile court applied the proper standard: the adult standard in light of juvenile norms. Because the juvenile court applied the proper standard, appellant can show no prejudice resulting from his counsel's failure to object to the use of that standard.
 {¶ 99} Appellant also argues that his trial counsel was ineffective for failing to make an adequate record during voir dire, and failing to ensure that written jury instructions were placed in the record. Again, appellant can point to no prejudice flowing from those alleged failures.
 {¶ 100} Finally, appellant has failed to prove ineffective assistance of counsel with regard to his trial counsel's failure to call defense witnesses, specifically an expert witness and/or appellant himself. Appellant cannot overcome the presumption that his counsel's decision not to call him to the stand was sound trial strategy. Appellant had already made incriminating statements to Detective Hayes. Calling appellant to the stand might have led to further incriminating statements and greatly damaged his chances for acquittal.
 {¶ 101} With respect to an expert, this court has held that the decision to call an expert witness is a matter of trial strategy. In re Spillman, Clinton App. No. CA2002-060-28, 2003-Ohio-713, ¶ 10. Further, the Ohio Supreme Court has held that an attorney's failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel. State v. Hartman, 93 Ohio St.3d 274, 299,2001-Ohio-1580. The record indicates that appellant's trial counsel decided to rely on cross-examination of Dr. Burkhardt rather than calling an expert witness. The record shows that appellant effectively cross-examined Dr. Burkhardt, who testified that it was "possible" that chest compressions administered by an inexperienced person caused the victim's death. Based on the record before us, the decision of appellant's trial counsel not to call an expert and to rely on cross-examination can fairly be called sound trial strategy.
 {¶ 102} Accordingly, appellant has failed to show that he did not receive the effective assistance of counsel. We overrule appellant's seventh assignment of error.
 {¶ 103} Assignment of Error No. 8:
 {¶ 104} "THE JUVENILE COURT ABUSED ITS DISCRETION WHEN IT COMMITTED J.B. TO THE OHIO DEPARTMENT OF YOUTH SERVICES UNTIL HIS TWENTY FIRST BIRTHDAY AND FURTHER ABUSED ITS DISCRETION WHEN IT FOUND THAT THERE WAS A NECESSITY FOR A SERIOUS YOUTHFUL OFFENDER DISPOSITION."
 {¶ 105} In this assignment of error, appellant argues that the juvenile court erred in its imposition of a juvenile sentence and in finding a necessity for a serious youthful offender disposition. Further, appellant argues that the court should have ordered a "forensic report concerning the advisability of treatment" prior to appellant's dispositional hearing.
 {¶ 106} "Ohio has long recognized that juvenile proceedings are not criminal in nature and the juvenile system must focus on the child's welfare." State v. Penrod (1989),62 Ohio App.3d 720, 722. While the objective of the juvenile system is rehabilitation rather than punishment, the juvenile justice system is purely a statutory creation and may contain punitive elements. In re Woodson (1994), 98 Ohio App.3d 678, 682. "Some juveniles learn only through detention, which is itself a means and method of education and rehabilitation." In re Samkas
(1992), 80 Ohio App.3d 240, 244. "The order of disposition in a juvenile case is a matter within the court's discretion." Statev. Matha (1995), 107 Ohio App.3d 756, 760.
 {¶ 107} We first address appellant's argument regarding the forensic report. The record shows that appellant's trial counsel requested such a report prior to the dispositional hearing, and that the court denied the request. Appellant points to no law requiring the court to order a forensic report.
 {¶ 108} We find that failing to order the forensic report was not error. For the court's aid in determining appellant's punishment and potential for rehabilitation, the court had for its consideration a rehabilitation assessment, a presentence investigation report, and the lengthy competency reports of Dr. Hopes and Dr. Lee. Additionally, a child therapist who had met with appellant once a week testified at the dispositional hearing. The director of administrative services for the juvenile court, who had frequent contact with appellant, also testified at the hearing. Further, appellant's guardian ad litem gave an oral report at the hearing. It is clear from the record that the court had ample information to weigh appellant's prospects for rehabilitation and appropriately determine appellant's punishment.
 {¶ 109} We now address the appropriateness of appellant's juvenile and adult sentences. R.C. 2152.13 sets forth the procedures for sentencing a juvenile deemed a serious youthful offender. In order to impose an adult sentence pursuant to Chapter 2929 of the Revised Code, the juvenile court was required to make the following finding in R.C. 2152.13(D)(2)(a)(i):
 {¶ 110} "[G]iven the nature and circumstances of the violation and the history of the child, the length of time, level of security, and types of programming and resources available in the juvenile system alone are not adequate to provide the juvenile court with a reasonable expectation that the purposes set forth in section 2152.01 of the Revised Code will be met[.]"
 {¶ 111} If the juvenile court imposes a serious youthful offender sentence under R.C. 2152.13(D)(2)(a)(i), the court must also impose a more traditional juvenile sentence such as a sentence authorized by R.C. 2152.16. See R.C.2152.13(D)(2)(a)(ii). The juvenile court must stay the adult portion of the serious youthful offender sentence pending the successful completion of the traditional juvenile sentence. See R.C. 2152.13(D)(2)(a)(iii).
 {¶ 112} Several witnesses testified at the dispositional hearing. Brenda Sugerman, a child and family therapist who had regularly counseled appellant following his brother's death, was the first witness to testify. She testified that appellant would be a good candidate for a local rehabilitation facility. She stated that appellant had made excellent progress in dealing with his emotions, and had shown "tremendous remorse" for his role in the death of his baby brother. Ms. Sugerman testified that if appellant was released to society in the near future, she would not have concerns that he would be a detriment to himself or others. At the time of the hearing, appellant had been in the juvenile detention center for approximately one year. Ms. Sugerman testified that appellant had benefited from the "structure" at the detention center, and that she noticed no detriment resulting from appellant's stay there.
 {¶ 113} Tim Myers, director of administrative services for the juvenile court, also testified at the dispositional hearing. Mr. Myers had frequent contact with appellant at the juvenile detention center. He testified that appellant "got along pretty well in the facility." He further testified that appellant would do well in the rehabilitation facility, though Mr. Myers questioned his own ability to determine the appropriateness of such a placement in relation to other alternatives.
 {¶ 114} Appellant himself gave a statement at his dispositional hearing. He expressed remorse for his role in death of the victim, and that he deserved to "get time" for what happened. Appellant stated that he was worried about not seeing his siblings. Appellant also stated that he had been "saved," and asked the court to send him to the rehabilitation facility.
 {¶ 115} Appellant's guardian ad litem, Nicole Stephenson, gave an oral report at the hearing. She asked the court to send appellant to the rehabilitation facility, where he had been accepted following an evaluation. Ms. Stephenson noted appellant's young age and his remorse, questioning statements in the PSI that appellant did not have remorse. She also noted that appellant had been physically and sexually abused. She stated that he had never been taught good parenting skills, but was expected to parent his younger siblings. She argued that appellant deserved a chance to prove himself at the rehabilitation facility.
 {¶ 116} Appellant's mother briefly spoke at the hearing. She stated that while she did not approve of what her son did, she wanted the court to have mercy on him and give him an opportunity to prove himself.
 {¶ 117} Pursuant to its discretion under R.C.2152.13(D)(2)(a)(i), the juvenile court decided that a serious youthful offender disposition was necessary. Pursuant to that statute, the court found that given "the nature and the circumstances of the convictions and history of * * * [J.B.], that the length of time, level of security, and resources available in the juvenile system alone are not adequate to provide the Court a reasonable expectation that the purposes set forth in Ohio Revised Code Section * * * [2152.01] will be met." The court subsequently imposed concurrent adult prison sentences of 15 years to life for murder, and two years for child endangering. Pursuant to R.C. 2152.13(D)(2)(a)(ii), the court also imposed concurrent juvenile sentences of until the age of 21 for murder, and one year for child endangering. Pursuant to R.C.2152.13(D)(2)(a)(iii), the court stayed the adult sentence pending appellant's successful completion of his juvenile sentence.
 {¶ 118} In sentencing appellant, the court stated that it considered the facts of the case as heard by the jury. The court also stated that it considered the PSI and the rehabilitation evaluation. Further, the court stated that while it took no pleasure in sentencing appellant, it had responsibilities other than appellant's rehabilitation. The court stated that it had a responsibility to hold appellant accountable for his crimes and to protect the public by ensuring that appellant did not re-offend. The court also noted that it had a responsibility to the victim. According to the court, the rehabilitation program would not be sufficient to hold appellant accountable for his crimes, and would not adequately ensure the public's safety. In the court's opinion, the resources available in the juvenile system were not adequate to fulfill the purposes of R.C. 2152.01.
 {¶ 119} After reviewing the record, we find no error by the juvenile court in its decision to impose a serious youthful offender disposition. The court properly followed the statutory sentencing procedure, and made the required finding under R.C.2152.13(D)(2)(a)(i). That finding is supported by the record. There was some testimony at the sentencing hearing that appellant would benefit from the rehabilitation program. However, given the brutality of the crime, committed against a defenseless young child, we find that the court's concerns about holding appellant accountable and protecting the public were well-founded. Such concerns reflect that the overriding purposes for juvenile dispositions under Chapter 2152 are not only to provide for "the care, protection, and mental and physical development of children," but also to "protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." See R.C. 2152.01(A). The juvenile court determined that in order to fulfill the purposes of protecting public safety and holding appellant accountable for the death of the victim, punishment beyond juvenile detention was necessary. We find no error in that decision.
 {¶ 120} We further find no error in the court's imposition of the juvenile sentences. Because the juvenile court found that a serious youthful offender disposition was necessary, it was required to impose juvenile sentences. See R.C.2152.13(D)(2)(a)(ii). Those sentences were within the ranges authorized by law for juveniles found delinquent for committing murder and child endangering. See R.C. 2152.16(A)(1)(a) and R.C.2152.16(A)(1)(d). As previously stated, there was some testimony that appellant was a good candidate for a rehabilitation program. However, there was also testimony that appellant was benefiting from the structure in juvenile detention, and had suffered no detrimental effects from that confinement. Further, appellant committed a brutal physical assault of a defenseless young child that resulted in that child's death. The facts of the case point to the need for substantial confinement in order to hold appellant accountable and protect the public.
 {¶ 121} Accordingly, we find no error in the juvenile court's decision to impose a serious youthful offender disposition and in its accompanying disposition of a traditional juvenile sentence. We overrule appellant's eighth assignment of error.
 {¶ 122} Assignment of Error No. 9:
 {¶ 123} "THE TRIAL COURT ERRED WHEN IT IMPOSED A TERM OF INCARCERATION THAT EXCEEDED THE MINIMUM TERM OF INCARCERATION. THE SERIOUS YOUTHFUL OFFENDER SENTENCE WAS IMPROPERLY BASED ON FACTS THAT WERE NOT FOUND BY THE JURY, IN CONTRAVENTION OFBLAKELY V. WASHINGTON."
 {¶ 124} In this assignment of error, appellant argues that because the court and not the jury made the serious youthful offender finding under R.C. 2152.13(D)(2)(a)(i), his constitutional right to a jury trial was violated. For support, appellant cites Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, and Apprendi v. New Jersey (2000), 530 U.S. 466,120 S.Ct. 2348.
 {¶ 125} In Apprendi, the U.S. Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi at 490. In Blakely, the Supreme Court held that "the `statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basisof the facts reflected in the jury verdict or admitted by thedefendant." (Emphasis sic.) Blakely at 303. The Blakely
court held that a sentence imposed based on facts not before the jury or admitted by the offender violated the offender's federal constitutional right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence. Id. at 313.
 {¶ 126} Appellant's right to a jury trial was not violated due to the juvenile court judge making the finding in R.C.2152.13(D)(2)(a)(i). The sentence appellant received was derived from the jury's verdict on the murder and child endangering counts, not from any additional fact finding engaged in by the juvenile court. Pursuant to R.C. 2152.11(B)(2) and R.C.2152.11(E)(2), appellant was subject to a serious youthful offender disposition at the discretion of the juvenile court simply by virtue of the delinquency finding for murder and child endangerment. Therefore, the range of appellant's potential punishment by virtue of the jury verdict alone included the applicable adult punishment set forth in Revised Code Chapter 2929. In making the finding in R.C. 2152.13(D)(2)(a)(i), the court was determining appellant's punishment within the statutorily prescribed range, taking into account the nature and circumstances of the offense, and the security, programming, and resources available in the juvenile system. The court's consideration of those matters did not violate appellant's right to a jury trial. See State v. Combs, Butler App. No. CA2000-03-47, 2005-Ohio-1923, ¶ 59, and State v. Farley, Butler App. No. CA2004-04-085, 2005-Ohio-2367, ¶ 42 (consideration of discretionary sentencing factors by judge did not violate offender's right to jury trial where sentence imposed was within statutorily defined range for offense).
 {¶ 127} Accordingly, we do not find plain error or any error. Appellant's ninth assignment of error is overruled.
 {¶ 128} Assignment of Error No. 10:
 {¶ 129} "OHIO'S SERIOUS YOUTHFUL OFFENDER DISPOSITIONAL SENTENCING SCHEME, R.C. 2152.021, R.C. 2152.11, R.C. 2152.13, AND R.C. 2152.14, VIOLATES A JUVENILE'S RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT AND VIOLATED J.B.'S RIGHT AGAINST CRUEL AND UNUSUAL PUNISHMENT AS APPLIED AS GUARANTEED BY THE EIGHTH ANDFOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 9 OF THE OHIO CONSTITUTION."
 {¶ 130} In this assignment of error, appellant argues that the serious youthful offender sentencing scheme violates theEighth Amendment's prohibition against "cruel and unusual punishment" as applied to him and to juveniles at large. Appellant argues that the "general differences between juveniles and adults demonstrate that juvenile offenders cannot with reliability be classified among the worst offenders[.]"
 {¶ 131} "Cases in which cruel and unusual punishments have been found are limited to those [cases] involving sanctions which under the circumstances would be considered shocking to any reasonable person." McDougle v. Maxwell (1964),1 Ohio St.2d 68, 70. The penalty must be so greatly disproportionate to the offense that it shocks the sense of justice of the community.State v. Weitbrecht, 86 Ohio St.3d 368, 371, 1999-Ohio-113, citing State v. Chaffin (1972), 30 Ohio St.2d 13, paragraph three of the syllabus. "Generally, a sentence within statutory limitations is not excessive and does not violate the constitutional prohibition against cruel and unusual punishment."State v. Bosman, Butler App. No. CA2001-05-101, 2002-Ohio-22, 2002 WL 42887, *1. See, also, State v. Juliano (1970),24 Ohio St.2d 117, 120.
 {¶ 132} Ohio's serious youthful offender law applies to juveniles ages ten through 17. With respect to appellant, who was 13 years old at the time of the crime, the law states that he was subject to a discretionary serious youthful offender disposition based on the delinquency findings for murder and child endangering. R.C. 2152.11(B)(2) and R.C. 2152.11(E)(2). As previously stated, if the juvenile court made the finding in R.C.2152.13(D)(2)(a)(i), the court could sentence appellant as an adult. However, that section specifically prohibits the court from sentencing a juvenile offender to death or to life in prison without parole. Further, it is mandatory that the court stay the adult sentence pending the successful completion of a juvenile sentence. R.C. 2152.13(D)(2)(a)(iii). The juvenile court can only impose the adult sentence if it makes certain findings after a hearing. Those findings include that the juvenile is at least 14 years old. R.C. 2152.14(E)(1). Those findings also include that (1) the juvenile has committed an act that could be charged as a felony or first-degree misdemeanor if committed by an adult, or (2) the juvenile has engaged in conduct that creates a substantial risk to the safety of the institution holding him, the community, or the victim. Id.
 {¶ 133} After reviewing Ohio's serious youthful offender sentencing scheme, we do not find that the scheme permits "cruel and unusual punishment." The scheme does not provide for penalties against juveniles so greatly disproportionate to the offenses committed that those penalties shock the sense of justice in the community. As noted above, the scheme prohibits the imposition of the most severe adult punishment. Further, the scheme reserves adult punishment only for serious juvenile offenders not capable of being rehabilitated within the juvenile system. Among juveniles who receive an adult sentence, only those who commit further serious wrongdoing and who are at least 14 years old can be ordered to serve the adult sentence.
 {¶ 134} With respect to appellant specifically, his contingent adult sentences of 15 years to life for murder and two years for child endangering were clearly within the statutory limitations of Ohio's serious youthful offender sentencing scheme. Given the seriousness of the crimes appellant committed and the brutality with which he committed the crimes, we do not find that appellant's punishment was so excessive as to violate his Eighth Amendment rights. Accordingly, we overrule appellant's tenth assignment of error.
 {¶ 135} Assignment of Error No. 11:
 {¶ 136} "OHIO'S SERIOUS YOUTHFUL OFFENDER LAW, R.C. 2152.021, R.C. 2152.11, R.C. 2152.13, AND R.C. 2152.14[,] VIOLATES A JUVENILE'S RIGHT TO DUE PROCESS AS GUARANTEED BY THE FIFTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION."
 {¶ 137} In this assignment of error, appellant argues that Ohio's serious youthful offender law violates due process because it targets very young offenders, treats juveniles as adults, and fails to provide an "amenability hearing." According to appellant, Ohio's serious youthful offender law undermines the original purpose of the juvenile system that was based on juvenile-adult differences.
 {¶ 138} Initially, we note that all legislative enactments enjoy a strong presumption of constitutionality. State v.Collier (1991), 62 Ohio St.3d 267, 269. Applying the above presumption and the pertinent rules of construction, courts must uphold, if at all possible, a statute assailed as unconstitutional. State v. Dorso (1983), 4 Ohio St.3d 60, 61. The party challenging the constitutionality of a statute bears the burden of proving the constitutional invalidity of that statute. State v. Anderson (1991), 57 Ohio St.3d 168, 171.
 {¶ 139} Contrary to appellant's argument, the serious youthful offender sentencing scheme does not unconstitutionally "target" very young offenders or unconstitutionally treat juveniles as adults. While the scheme does, under certain circumstances, subject juveniles to adult punishment, the statute was crafted to take into account juvenile-adult distinctions. As previously noted, the most severe adult punishments are prohibited by R.C. 2152.13(D)(2)(a)(i). Further, the juvenile court can order adult punishment only after the juvenile court determines pursuant to R.C. 2152.13(D)(2)(a)(i) that the juvenile system alone cannot adequately fulfill the purposes for disposition outlined in R.C. 2152.01(A). Additionally, while a juvenile as young as ten can receive a serious youthful offender disposition, the juvenile court can only invoke the adult punishment if the juvenile is at least 14 years old, and if the juvenile has engaged in further serious wrongdoing. See R.C.2152.14(E). The court must also determine, after a hearing, that the juvenile offender is unlikely to be rehabilitated during the remaining period of juvenile jurisdiction. See id. Ohio's serious youthful offender statutes take into account juvenile-adult differences and make clear that disposition within the juvenile system, if possible, is the preferred form of punishment and rehabilitation. We find no due process violation.
 {¶ 140} We also do not find that the lack of an amenability hearing "at the original disposition hearing or at a hearing to determine whether the adult portion of the sentence should be invoked" violates due process. As noted above, the juvenile court must consider, at the time it imposes an adult sentence and at the time it invokes the adult sentence, whether the juvenile system can adequately rehabilitate appellant. See R.C.2152.13(D)(2)(a)(i) and R.C. 2152.14(E). Before invoking the adult punishment, the court must hold a full hearing, at which the juvenile could present evidence in favor of remaining within the juvenile system. See R.C. 2152.14(D). We find that the procedures in Ohio's serious youthful offender statutes adequately address due process concerns regarding the serious youthful offender's amenability to the juvenile or adult systems.
 {¶ 141} Appellant has failed to meet his burden of proving that Ohio's serious youthful offender sentencing scheme violates due process. Accordingly, we overrule his eleventh and final assignment of error.
 {¶ 142} Judgment affirmed.
Walsh and Hildebrandt, JJ., concur.
Hildebrandt, J., of the First Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.
[1] In the murder count, the state alleged that appellant purposely caused the death of the victim as a proximate result of committing "an offense of violence to wit: Endangering Children[.]"