[Cite as *In re D.L.*, 2017-Ohio-2823.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

D.L.

MINOR CHILD

JUDGES:
Hon. William B. Hoffman, P. J.
Hon. John W. Wise, J.
Hon. Craig R. Baldwin, J.

Case No. 2016 CA 00125

O P I N I O N

CHARACTER OF PROCEEDING: Civil Appeal from the Court of Common Pleas, Juvenile Division, Case No. 2015 JCR 00693

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: May 15, 2017

APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
PROSECUTING ATTORNEY
RONALD MARK CALDWELL
ASSISTANT PROSECUTOR
110 Central Plaza South, Suite 510
Canton, Ohio 44702-0049

For Defendant-Appellant

MICHAEL P. WALTON
ASSISTANT PUBLIC DEFENDER
250 East Broad Street
Suite 1400
Columbus, Ohio 43215

*Wise, John, J.*

{¶1} Appellant D.L., a juvenile, appeals his adjudication, in the Stark County Court of Common Pleas, Juvenile Division, for delinquency by reason of gross sexual imposition. Appellee is the State of Ohio. The relevant procedural facts leading to this appeal are as follows.[1]

{¶2} On April 24, 2015, a juvenile complaint was filed in Stark County alleging Appellant D.L., then a 15-year-old male, was delinquent via the commission of gross sexual imposition (R.C. 2907.05(A)(4)), a felony of the third degree if committed by an adult. According to the complaint, brought under juvenile court case number 2015-JCR-00693, appellant was fourteen at the time of the offense, and the victim was a ten-year-old female.

{¶3} Subsequently, appellant was also the subject of a delinquency complaint for allegedly violating a prior court order ("VIPCO"), under juvenile court case number 2015-JCR-01382. The two cases were combined for economy of adjudication and disposition, although 2015-JCR-01382 is not specifically referenced in the underlying notice of appeal.

{¶4} Appellant initially entered pleas of not true.

{¶5} On May 22, 2015, during pretrial proceedings, appellant's trial counsel requested a competency evaluation for his client. The juvenile court granted the request. Psychologist Colin Christensen, Ph.D., subsequently conducted appellant's competency evaluation.

---

[1] A detailed statement of the facts underlying the delinquency complaint against appellant is not necessary for our disposition of the present appeal.

**{¶6}** In his ensuing report, Dr. Christensen discussed *inter alia* appellant's significant mental health history, medications, and treatment. He noted appellant's existing diagnoses included, but were not limited to, autism spectrum disorder, posttraumatic stress disorder, Asperger's disorder, dysthymia, ADHD, adjustment disorder, and anxiety disorder. *See* Competency Report and Evaluation, July 10, 2015, State's Exh. 5, at 3. Dr. Christensen also determined that appellant sometimes demonstrated a "lack of common sense," but displayed above-average intelligence. *See* Evaluation at 4. Dr. Christensen further concluded that appellant was not competent to stand trial in the juvenile court at that time, but in his professional opinion it was "likely that [appellant] could attain competency to stand trial within six months in a non-residential setting." *See* Evaluation at 6-7 (emphases deleted). The recommended competency attainment services included education regarding the seriousness of the charges, the roles of the judge and the attorneys, appreciation of the consequences of the charges and future adjudication, and decision-making as to plea bargaining. *Id.* at 7.

**{¶7}** On July 20, 2015, based upon a stipulation to the aforesaid report, the juvenile court ordered that appellant undergo competency attainment services, and that periodic review take place of the progress of these services. Accordingly, Kimberly Genis, M.Ed., who is employed by the juvenile court to provide attainment and/or restorative services, including competency attainment, conducted nine sessions with appellant over a three-month period. Genis also submitted periodic reports to the court, the last of which, submitted October 29, 2015, reached the following conclusion: "It is through review of created modules, discussion, questioning, a courtroom tour and

quizzes that I have come to the conclusion that [appellant] has successfully achieved the goals of the attainment plan." *See* State's Exh. 8.

**{¶8}** The case was then set for a pre-trial to the senior magistrate on November 16, 2015. At said hearing, the State asked the court to proceed to an adjudicatory hearing based upon Genis's aforesaid report that essentially concluded attainment had been successful. However, appellant's defense counsel disputed proceeding to adjudication, and instead requested another competency evaluation. Defense counsel urged that since Genis's role was to provide attainment services, not to determine competency, an additional qualified competency review was needed, including a review of the attainment service reports. Tr. at 8. The senior magistrate ultimately did not grant counsel's request for a new evaluation, but he scheduled an evidentiary hearing before the juvenile judge. *See* Magistrate's Order, Nov. 18, 2015.

**{¶9}** After one continuance, the evidentiary hearing regarding competency went forward on December 22, 2015. The State called Ms. Genis as a witness, while appellant called Dr. Christensen. Appellant also called Clorinda Brace, service coordinator for the Tuscarawas County Family Children's First Council, and Jamar Wedeaamn, appellant's direct care mentor from Pathway Caring for Children.

**{¶10}** Via a judgment entry issued the day after the competency hearing, the juvenile court found appellant competent for purposes of adjudication; *i.e.*, it concluded appellant had "attained a necessary level of competency to stand trial on this offense."

**{¶11}** The matter proceeded to an additional pre-trial hearing before a magistrate on February 1, 2016. The court was informed at that time that appellant would be entering an admission to the gross sexual imposition complaint. After reciting the rights

appellant would be waiving by entering an admission, the court accepted appellant's plea of true.

{¶12} Upon the completion of a risk assessment, the juvenile court conducted a dispositional hearing on May 9, 2016. Following said hearing, appellant was committed to the Ohio Department of Youth Services for a minimum period of six months and a maximum period until his twenty-first birthday. The court also classified appellant as a Tier I juvenile sex offender. A final judgment entry was filed on May 19, 2016.

{¶13} On June 17, 2016, appellant filed a notice of appeal. He herein raises the following sole Assignment of Error:

{¶14} "I. D.L. WAS DENIED HIS RIGHT TO DUE PROCESS OF LAW WHEN HE WAS ADJUDICATED DELINQUENT WHILE HE WAS INCOMPETENT, IN VIOLATION OF R.C. 2152.51; JUV.R. 29; THE FIFTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; AND, ARTICLE I, SECTION 16, OHIO CONSTITUTION."

I.

{¶15} In his sole Assignment of Error, appellant contends he was deprived of his constitutional rights when he was adjudicated a delinquent child. We disagree.

{¶16} The United States Supreme Court has long held that due process protections must be afforded to children. *In re Gault,* 387 U.S. 1, 30-31, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Furthermore, it is well-established that an incompetent defendant may not be convicted of a crime, and this fundamental right extends to juvenile proceedings. *See In re Williams,* 116 Ohio App.3d 237, 241, 687 N.E.2d 507 (2nd Dist. Montgomery 1997). Juv.R. 29(D)(1) generally prohibits a juvenile court from accepting an admission to delinquency allegations without ensuring that the person is "making the

admission voluntarily with understanding of the nature of the allegations and the consequences of the admission[.]"

**{¶17}** With the passage of 2011 H.B. 86, the Ohio General Assembly enacted statutory provisions to govern juvenile competency determinations. *In re D.T.W.*, 12th Dist. Butler No. CA2014–09–198, 2015-Ohio-2317, ¶ 15. In particular, R.C. 2152.51(A)(1) states in pertinent part: " *** A child is incompetent if, due to mental illness, due to developmental disability, or otherwise due to a lack of mental capacity, the child is presently incapable of understanding the nature and objective of proceedings against the child or of assisting in the child's defense." *See*, *also*, Juv.R. 32(A)(4).

**{¶18}** Furthermore, R.C. 2152.54(A) states as follows:

**{¶19}** "An evaluation of a child who does not appear to the court to have at least a moderate level of intellectual disability shall be made by an evaluator who is one of the following:

**{¶20}** "(1) A professional employed by a psychiatric facility or center certified by the department of mental health and addiction services to provide forensic services and appointed by the director of the facility or center to conduct the evaluation;

**{¶21}** "(2) A psychiatrist or a licensed clinical psychologist who satisfies the criteria of division (I) of section 5122.01 of the Revised Code and has specialized education, training, or experience in forensic evaluations of children or adolescents."

**{¶22}** The Ohio Supreme Court has determined that "[i]ncompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *State v. Bock,* 28

Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986). Appellate review of a trial court's determination of competency to stand trial is under an abuse of discretion standard. *See State v. Vrabel,* 99 Ohio St.3d 184, 2003–Ohio–3193, ¶ 33. Furthermore, a trial court's finding that a defendant is competent to stand trial will not be disturbed when there is some reliable and credible evidence supporting that finding. *State v. Were,* 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 46.

<u>*Dr. Christensen Report and Testimony*</u>

**{¶23}** As noted in our previous recitation of the procedural facts, Dr. Christensen in his report discussed appellant's mental health history, medications, and treatment. Dr. Christensen determined that, while appellant displayed above-average intelligence, he sometimes demonstrated a "lack of common sense," could not consistently identify the role of the prosecutor, defendant, guardian ad litem, or some aspects of the process of determining culpability, and would benefit from being trained on the role of court personnel and taught effective decision-making strategies. Evaluation at 4-6. However, Dr. Christensen concluded that appellant would "likely" be competent if the focal points set forth in the initial evaluation were addressed.

**{¶24}** Dr. Christensen also testified at the December 22, 2015 hearing. In addition to detailing his process for evaluating appellant, he explained *inter alia* the impact of appellant's Asperger's diagnosis. Tr., Dec. 22, 2015, at 32-34. Specifically, Dr. Christensen testified that, although D.L. had a good vocabulary and above-average IQ, he was immature and demonstrated a lack of common sense and poor decision-making ability. *Id.* at 33-36, 41. He opined that "common sense" was something people use to make good decisions, and that good decision-making was not one of appellant's

strengths. *Id.* at 39-40. When asked if he was "able to say [appellant] is restored without reevaluating him," Dr. Christensen replied in the negative. *Id.* at 40.

<u>*Kimberly Genis*</u>

**{¶25}** Kimberly Genis, who provided attainment services for appellant, is the mental health coordinator for Stark County Family Court and a part-time counselor at Northeast Ohio Behavioral Health. She has a master's degree in mental health counseling and is a licensed counselor who is required to earn thirty hours of continuing education every two years to maintain a current license. Tr., Dec. 22, 2015, at 5-7. She indicated she had obtained four hours of training on administering attainment services, although those hours did not count towards her thirty-hour continuing education requirement. *Id.* at 19-20. After nine attainment sessions with appellant, Genis was able to determine that appellant had achieved all of the goals set forth in the competency evaluation, *i.e.,* understanding the charges, pleas, possible consequences, courtroom personnel, courtroom proceedings, trial process, giving testimony, plea bargaining, and understanding and appreciating communication with his attorney. *Id.* at 9-12, 14-19. It is undisputed her assessment was that the attainment services were successful, but she acknowledged that she was not qualified to evaluate appellant for competency. *Id.* at 26.

<u>*Clorinda Brace*</u>

**{¶26}** At the December 22, 2015 hearing, appellant called Clorinda Brace, LSW, the service coordinator for the Tuscarawas County Family Children's First Council. Brace, who holds a master's degree in guidance and counseling, met with appellant in her capacity as a service coordinator on either a monthly or bi-weekly basis from May through September 2015. She testified that appellant had had conversations with her

that "did not make sense" and that his level of understanding of right from wrong fluctuated. Tr., Dec. 22, 2015, at 47-48. She stated that he did not fully understand the consequences of his actions and that he would sometimes mentally get stuck in "fantasy type situations." *Id.* at 48-49. She similarly explained that appellant would sometimes describe having interactions with people that she knew did not exist and that she would have trouble convincing him that his interactions with them were not real. *Id.* at 49.

### *Jamar Wedeaamn*

**{¶27}** Appellant also called Jamar Wedeaamn, his direct care mentor from Pathway Caring for Children. Wedeaamn had been in a mentor role, once a week, for approximately two to three years, where he observed that appellant showed interest in video games and fantasy worlds. Wedeaamn described some of appellant's descriptions of his unusual thoughts. Tr. at 54-60. For example, appellant told Wedeaamn about being part of a group of people who are "here to save the planet," or so-called "time-line people," the details of which he said he could not fully disclose without being in danger. *Id.* at 55-56. Appellant also believed he had the ability to go into the future. *Id.* at 57. Although Wedeaamn felt that appellant could differentiate video games from "real life," he expressed general concern about appellant's perception of reality. *Id.* at 55-59. He also noted that he believed appellant knew right from wrong, but that he did not always understand the consequences of his actions or decision-making. *Id.* at 60. On cross-examination, Wedeaamn described appellant as "very intelligent." *Id.* at 61.

### *Appellant's Colloquy with Juvenile Court*

**{¶28}** Although it occurred subsequent to the December 22, 2015 evidentiary hearing regarding competency, appellant also points out the following exchange during the February 1, 2016 plea:

**{¶29}** "Court: *** [D.L.] while you're still standing here talking to me, you know a lot of that was kind of the legal phrasing of, of, of the law and sometimes legal phrasing is meant to confuse the best of us. But I want to be clear and you, you tell me in your own words what it is that you, you did um *** during the course of that overnight with the victim.

**{¶30}** "D.L.: I can't really remember much because my memory gets a little foggy after some nights. It's something I'm trying to get through. I'm still trying to remember what happened as I went through.

**{¶31}** "Court: Okay, you just indicated that you admitted to gross sexual imposition.

**{¶32}** "D.L.: Yes, but some nights I will forget some things. Sometimes ***.

**{¶33}** "Court: What do you believe you could have done then?

**{¶34}** "D.L.: Uh *** it's hard to say for me.

**{¶35}** "Court: If it's hard to say for you right here at this moment, it's not going to go well for you in the risk assessment. You think this is an uncomfortable ***.

**{¶36}** "D.L.: Right.

**{¶37}** "Court: Moment but I'm actually trying to help you.

**{¶38}** "D.L.: I know ma'am. It's just, it's sometimes hard for me to remember. Like *** things really far back.

{¶39} "Court: If you can't face what you did, treatments (*sic*) going to become difficult.

{¶40} "D.L.: I know and I'm trying to be.

{¶41} "Court: Do you want to give it one more shot? Your, your attorney can't help you because she wasn't there.

{¶42} "D.L.: I understand.

{¶43} "Court: And, it's up to you. Do you want to tell me what it is that you believe that you did that you're admitting to today?

{¶44} "D.L.: I believe that it was in that paper I *** might have done.

{¶45} "Court: What's in that paper?

{¶46} "D.L.: That I touched her butt and her breasts."

{¶47} Tr., Feb. 1, 2016, at 8-10.

### *Analysis*

{¶48} "Once the juvenile court has determined that an offender is not competent to stand trial * * * a presumption of incompetence arises, which the state must rebut by coming forward with evidence of competency." *In re Braden,* 176 Ohio App.3d 616, 2008-Ohio-2981, ¶ 12 (1st Dist. Hamilton). *But see* R.C. 2152.52(A)(2). Appellant in the case *sub judice* does not dispute that Dr. Christensen originally found him incompetent, but restorable. Nonetheless, appellant maintains that although he was given attainment services, the State never overcame the presumption that he was incompetent. Appellant further urges that the plea colloquy of February 1, 2016, *supra*, demonstrates that he did not understand the nature of the allegations against him or the consequences of his plea. In essence, we find the primary issue to be decided is whether under such circumstances

the juvenile court violated appellant's right to due process by adjudicating him delinquent despite failing to order a second competency evaluation.

**{¶49}** The Ohio Supreme Court has recognized that deference on competency issues should be given to those who see and hear what goes on in the courtroom. *See State v. Mink*, 101 Ohio St.3d 350, 2004-Ohio-1580, ¶ 50. Furthermore, it is not necessary for a juvenile court "to obtain a majority of experts in favor of competency or incompetency." *In re J.B.*, 12th Dist. Butler No. CA2004–09–226, 2005-Ohio-7029, ¶ 36. The relevant question is "whether there was sufficient evidence before the court for it to make a well-informed decision regarding appellant's competency." *Id.*

**{¶50}** In this instance, Dr. Christensen had indicated via his expert opinion that appellant would "likely" be competent if all of the attainment goals set forth in the evaluation were addressed. Ms. Genis then built upon Dr. Christensen's foundation by working with appellant on these goals, and the record indicates she was confident that she had imparted to appellant an understanding and appreciation of the requisite concepts. While the evidence offered by appellant via Ms. Brace and Mr. Wedeaamn bore on appellant's general mental condition, it did not specifically expound upon his understanding of the competency concepts and factors, and it would not have necessarily outweighed the juvenile court's reliance on the input of Dr. Christensen and Ms. Genis. We note R.C. 2152.59(H)(1) gives a juvenile court discretion on ordering a new competency evaluation to assist in its determination following an attainment services report. While ideally it may have been more illuminating on the competency issue and the expressed "common sense" concerns to have secured a follow-up evaluation by Dr. Christensen, we hesitate to herein formulate a bright-line rule

mandating this additional step, given the discretion we must afford to the juvenile court in addressing delinquency and juvenile competency matters.

{¶51} Accordingly, upon review, we find no abuse of discretion or violation of due process in the juvenile court's procedure and implicit determination that appellant was capable of understanding the nature and objective of the proceedings against him and of assisting in his defense. R.C. 2152.51(A)(1), *supra*.

{¶52} Appellant's sole Assignment of Error is therefore overruled.

{¶53} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Juvenile Division, Stark County, Ohio, is hereby affirmed.


By: Wise, John, J.

Hoffman, P. J., and

Baldwin, J., concur.


JWW/d 0411