[Cite as *In re J.S.*, 2017-Ohio-6898.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IN RE: J.S. | JUDGES:<br>Hon. W. Scott Gwin, P.J.<br>Hon. William B. Hoffman, J.<br>Hon. John W. Wise, J.<br><br>Case No. 2016CA00196<br><br>O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Stark County Court of Common Pleas, Juvenile Division, Case No. 2015JCR989 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | July 17, 2017 |
| APPEARANCES: | |

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| JOHN D. FERRERO,<br>PROSECUTING ATTORNEY,<br>STARK COUNTY, OHIO<br><br>By: RONALD MARK CALDWELL<br>Assistant Prosecuting Attorney<br>Appellate Section<br>110 Central Plaza S., Suite 510<br>Canton, Ohio 44702 | AARON KOVALCHIK<br>116 Cleveland Ave. N.W.<br>Suite 808<br>Canton, Ohio 44702 |

*Hoffman, J.*

**{¶1}** Appellant, J.S., a juvenile, appeals his adjudication as being delinquent for committing two counts of gross sexual imposition entered by the Stark County Court of Common Pleas, Juvenile Division. Appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On November, 27, 2014, K.B. took her young children to her ex-husband's family for the Thanksgiving holiday. Her child, C.K., was five years-old at the time. The next day, C.K. exhibited abnormal behavior, screaming and crying, banging his head against the wall, throwing his toys and hitting his sister. K.B. noticed C.K. acted "sad…embarrassed" and "scared." Tr. at 62. K.B. took C.K. to Mercy Medical Center the following day.

**{¶3}** While undergoing a medical evaluation, K.B. determined C.K. was wearing the same underwear as on Thanksgiving Day. The underwear were then taken into evidence.

**{¶4}** While at the hospital, C.K. was interviewed by a forensic examiner and examined by Megan Dahlheimer, a nurse practitioner with Akron Children's Hospital. C.K. was diagnosed as having been sexually abused, as the physical findings were consistent with such abuse.

**{¶5}** The Ohio Bureau of Criminal Investigation tested C.K.'s underwear, finding amylase, a mixture of saliva and bodily fluids, on four locations on the underwear. The dominant DNA profile on the underwear belonged to J.S.

{¶6} Detective Jason Fisher of the Perry Township Police Department spoke with J.S. on two occasions, once with his mother present and once with his grandmother present. J.S. admitted to licking and touching C.K.'s penis and butt. J.S. admitted to licking C.K.'s penis with his underwear on, and touching his penis with the underwear off. He stated he licked C.K.'s butt with his underwear on and off. Detective Fisher asked J.S. if this excited him, to which J.S. said "a little bit." Tr. at 86 Vol. III.

{¶7} On May 14, 2015, a juvenile complaint was filed in Stark County alleging Appellant, age thirteen at the time, delinquent via the commission of two counts of gross sexual imposition, R.C. 2907.05(A)(4), a felony of the third degree if committed by an adult.

{¶8} The trial court ordered a competency evaluation. On August 6, 2015, Appellant filed a motion to continue the competency hearing and a motion for a second competency evaluation. The trial court granted the motion via Order of August 11, 2015.

{¶9} The second competency evaluation conducted indicated Appellant was not competent to stand trial, but could be restored to competency within the statutory period. The trial court's September 9, 2015 Magistrate's Order indicates both parties stipulated to the competency reports, and requested the trial court to decide competency, with the trial court finding C.K. not competent, but likely to attain competency with restoration. The trial court then scheduled a review hearing.

{¶10} Via Judgment Entry entered April 6, 2016, the trial court determined J.S. had been restored to competency. The court specifically found Appellant capable of understanding the nature and objectives of the proceedings, and capable of assisting in

his defense. The court found another competency evaluation unnecessary given the evidence presented.

**{¶11}** On June 20, 2016, Appellant moved the trial court for a determination of the competency of the State's witness, C.K. In addition, Appellant moved the trial court to exclude the testimony of the forensic SANE examiner, Megan Dahlheimer and/or Suzanne Cutler.[1]

**{¶12}** Via Judgment Entry of August 9, 2016, the trial court found Appellant delinquent of the charges. Appellant was committed to the Ohio Department of Youth Services for a minimum period of six months and community control ordered.

**{¶13}** Appellant appeals, assigning as error,

I. WHETHER APPELLANT'S DELINQUENCY FINDINGS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

II. WHETHER THE TRIAL COURT ERRED IN FINDING THAT APPELLANT'S COMPETENCY TO STAND TRIAL HAD BEEN RESTORED.

I.

---

[1] Appellant moved the trial court to suppress his statements made during the interrogation by Detective Fisher. The State filed a memorandum contra. The trial court overruled the motion to suppress finding the statements were not custodial statements subject to suppression. Appellant does not appeal that finding of the trial court.

**{¶14}** In the first assignment of error, Appellant maintains his adjudication on two counts of gross sexual imposition were against the manifest weight and sufficiency of the evidence.

**{¶15}** We apply the same standard of review for weight and sufficiency of the evidence in juvenile delinquency adjudications as for adult criminal defendants. *In the Matter of: Joshua M.,* Ottawa App. No. OT–04–038, 2005–Ohio–3067 at paragraph 29.

**{¶16}** Our analysis for manifest weight differs from our review for sufficiency of the evidence. *State v. Thompkins,* 78 Ohio St.3d 380, 1997–Ohio–52, 678 N.E.2d 541. A challenge to the sufficiency of the evidence presents a question of law. *Thompkins* at 387, 678 N.E.2d 541, citations deleted. The proper analysis is "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Williams,* 74 Ohio St 3d 569, 576, 1996–Ohio–91, 446 N.E.2d 444, quoting *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

**{¶17}** While the test for sufficiency requires a determination of whether the State has met its burden of production, a manifest weight challenge questions whether the State has met its burden of persuasion. *Thompkins,* supra, 390. We must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice such that the conviction must be reversed and a new trial ordered. A new trial should be granted only in exceptional cases where the evidence weighs heavily against the conviction. *Thompkins*

at 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 485 N.E.2d 717.

**{¶18}** Megan Dahlheimer testified at the adjudication hearing her work in the Child Advocacy Center would be to provide medical care for the child, such as "basic medical examination, diagnostic testing, lab work, or anything required." Tr. at 9. The trial court designated Ms. Dahlheimer an expert. Tr. at 12.

**{¶19}** On December 3, 2014, Megan Dahlheimer watched a direct feed of the forensic interview with C.K. to make her medical diagnosis and to determine whether any treatments or additional examinations were necessary. Tr. at 12.[2] She then performed a medical examination of C.K. at the request of Stark County Child Protective Services. Dahlheimer diagnosed C.K. with sexual abuse, recommending he follow up with a child sexual abuse assessment. Dahlheimer did not make any physical findings, as touching would not leave physical findings. Tr. at 15. She testified the history and symptoms displayed by C.K. were consistent with a child who had been sexually abused. Tr. at 19.

**{¶20}** Dahlheimer testified she based her determination solely on C.K.'s statements and his forensic interview, wherein he stated he was touched and licked. Tr. at 22. She stated C.K. knew what grade he was in, there was no concern of developmental delay, and he could count and stated his age. She acknowledged he has sensory issues, a sensory processing disorder, which does not necessarily pertain to his development. Tr. at 23. She stated C.K. acted appropriately for a five year-old, and recognized the difference between a truth and a lie. Tr. at 25.

---

[2] Ms. Dahlheimer observed the forensic interview from a live feed in a separate room. Tr. at 21. She testified State's Exhibit 2 is a transcript of the interview she observed. Tr. at 17.

{¶21} C.K. testified at the adjudication hearing. Prior to his testimony, the trial court engaged in a colloquy with C.K. to determine his competency. Tr. at 70-74. The trial court then found C.K. competent to testify. Appellant's counsel did not cross-examine C.K. Tr. at 80.

{¶22} Detective Jason Fisher of the Perry Township Police Department interviewed J.S. on two occasions concerning the incident. J.S. admitted to licking C.K.'s penis with his underwear on, and touching his penis with his underwear off. J.S. further admitted to licking C.K.'s butt with his underwear on and off. Tr. at 86. Detective Fisher inquired of J.S. whether the act excited him, and J.S. admitted "a little bit." Tr. at 86.

{¶23} J.S. was adjudicated delinquent of two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4), as to C.K. The statute reads,

(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

***

(4) The other person, or one of the other persons, is less than thirteen years of age, whether or not the offender knows the age of that person.

{¶24} There is no dispute C.K. was five years-old at the time of the alleged conduct. During the forensic interview, C.K. stated J.S. touched and licked his penis. Megan Dahlheimer then diagnosed C.K. with sexual abuse. In his interviews with

Detective Fisher, J.S. admitted to licking C.K.'s penis over his underwear, and touching his penis with his underwear off. J.S. further admitted to licking C.K.'s butt with his underwear on and off. DNA testing confirmed J.S. as the major profile on the stains obtained from C.K.'s underwear. When asked by Detective Fisher if the act excited him, J.S. admitted "a little bit."

{¶25} We find there is competent, credible evidence upon which the trier of fact could find all of the elements of gross sexual imposition proven beyond a reasonable doubt. Appellant's adjudication on two counts of gross sexual imposition is not against the manifest weight, nor is it based on insufficient evidence.

{¶26} The first assignment of error is overruled.

II.

{¶27} In the second assignment of error, Appellant maintains the trial court erred in finding him competent to stand trial. We disagree.

{¶28} R.C. 2152.51 through R.C. 2152.59 govern juvenile competency determinations. *In re DTW*, 12th Dist. Butler No. CA2014-09-198, 2015-Ohio-2317. Pursuant to R.C. 2152.51(A)(1), a child is incompetent to stand trial if, due to mental illness, intellectual disability, or developmental disability, or otherwise due to a lack of mental capacity, "the child is presently incapable of understanding the nature and objective of proceedings against the child or of assisting in the child's defense." However, it is rebuttably presumed that a child does not have a lack of mental capacity if the child is: (1) fourteen years of age or older, and (2) not otherwise found to be mentally ill, intellectually disabled, or developmentally disabled. R.C. 2152.52(A)(2). As provided by R.C. 2152.52(A)(1), except in juvenile proceedings alleging that a child is an unruly child

or a juvenile traffic offender, "any party or the court may move for a determination regarding the child's competency to participate in the proceeding."

{¶29} If a party moves the juvenile court for a competency determination, such as the case here, the juvenile court may elect to hold a hearing to determine whether there is a reasonable basis to conduct a competency evaluation. R.C. 2152.53(A)(3). Thereafter, if the juvenile court finds there is a reasonable basis to conduct such an evaluation, or if the prosecuting attorney and the subject child's attorney agree to the evaluation, the juvenile court "shall order a competency evaluation and appoint an evaluator." R.C. 2152.53(B). In conducting this evaluation, the evaluator is not required "to act as if he is an attorney and explain the minutia of criminal procedure." *In re S.D.,* 2014–Ohio–2528 at ¶ 21. Rather, the evaluator is simply required to "assess whether the individual, in conjunction with advice from legal counsel, is capable of assisting counsel, understanding those things necessary for a proper defense, and for the individual to make informed decisions." *Id.*

{¶30} Upon completing the competency evaluation, the evaluator must then submit to the juvenile court a written competency assessment report. R.C. 2152.56(A). The report shall also include the evaluator's opinion as to whether the child, due to mental illness, intellectual disability, or developmental disability, or otherwise due to a lack of mental capacity, is currently incapable of understanding the nature and objective of the proceedings against the child or of assisting in the child's defense. R.C. 2152.56(A).

{¶31} After the competency evaluation is complete, the juvenile court "shall hold a hearing to determine the child's competency to participate in the proceeding." R.C. 2152.58(A). During this time, "a competency assessment report may be admitted into

evidence by stipulation." R.C. 2152.58(B). In determining the competency of the subject child, "the court shall consider the content of all competency assessment reports admitted as evidence." R.C. 2152.58(C). The juvenile court may also "consider additional evidence, including the court's own observations of the child's conduct and demeanor in the courtroom." *Id.*

**{¶32}** Following the juvenile court's competency hearing, if the juvenile court determines that the subject child is competent, "the court shall proceed with the delinquent child's proceeding as provided by law." R.C. 2152.59(A). However, if the juvenile court determines the "child is not competent but could likely attain competency by participating in services specifically designed to help the child develop competency, the court may order the child to participate in services specifically designed to help the child develop competency at county expense." R.C. 2152.59(C). If the subject child is required to participate in competency attainment services, such services shall last no longer than what is required for the child to attain competency, nor shall the child be required to participate in competency attainment services beyond the maximum time periods allowed by R.C. 2152.59(D)(2) and (D)(3). *Thereafter, following a hearing on the matter, and pursuant to R.C. 2152.59(H)(5), if the juvenile court determines the subject child has obtained competency after completing the necessary competency attainment services, "the court shall proceed with the delinquent child's proceeding" in accordance with R.C. 2152.59(A).* (Emphasis added.)

**{¶33}** An appellate court will not disturb a competency determination if there is "'some reliable, credible evidence supporting the trial court's conclusion that [the defendant] understood the nature and objective of the proceedings against him.'" *State v.*

*Ramirez,* 12th Dist. Butler No. CA2010–11–305, 2011–Ohio–6531, ¶ 30, quoting *State v. Williams,* 23 Ohio St.3d 16, 19 (1986); *In re A.T.,* 6th Dist. Ottawa Nos. OT–12–023 and OT–12–030, 2014–Ohio–1761, ¶ 39; *see also In re S.D.,* 2014–Ohio–2528 at ¶ 25 (affirming juvenile court's decision where there was "sufficient credible evidence for the trial court to find that [the subject child] was competent to stand trial"). "Deference on these issues should be given to those 'who see and hear what goes on in the courtroom.'" *State v. Locke,* 11th Dist. Lake No.2014–L053, 2015–Ohio–1067, ¶ 93, quoting *State v. Vrabel,* 99 Ohio St.3d 184, 2003–Ohio–3193, ¶ 33.

**{¶34}** Incompetency must not be equated with mere emotional instability or even with outright insanity. *State v. Bock,* 28 Ohio St3d. 108, 502 N.E.2d 1016 (1986). A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel. Id.

**{¶35}** After a thorough review of the record, we find reliable, credible evidence supports the trial court's decision finding J.S. competent to stand trial.

**{¶36}** Michael Stranathan, a psychological assistant at Northeast Ohio Behavioral Health, met with J.S. to prepare a competency evaluation. Stranathan opined Appellant was not competent to stand trial, but restorable should he undergo therapy. In Stranathan's professional opinion, Appellant was restorable to competency.

**{¶37}** Michael Stranathan testified as to his evaluation of J.S. He stated J.S. identified as having borderline intellectual functioning, was placed on an IEP, and identified as a child with attention deficit, oppositional defiant disorder and depressive disorders. Tr. II at 7. Stranathan testified it was his professional opinion J.S. was

restorable to competency. He appeared capable of learning legal concepts; therefore was restorable. Tr. at 10.

**{¶38}** Following the trial court's order of restoration, Appellant began therapy for restoration to competency with Becky Crookston, a clinical therapist at Northeast Ohio Behavioral Health. Crookston met with J.S. and his mother for thirteen sessions.

**{¶39}** The trial court conducted a competency evaluation hearing on March 24, 2016, and April 6, 2016. At the hearing, Becky Crookston testified Appellant demonstrated sufficient knowledge of the legal process, could assist his counsel in his defense, and attained the goals to attain competency. Tr. at 16-17.  Crookston testified Appellant verbalized an understanding of the professional's role in the trial process, as well as the application of the charges. She opined Appellant was competent to stand trial as he had a conceptual understanding of the penalties he faced, the proceedings, the nature of his assistance to counsel and of behavioral outcomes. Becky Crookston determined attainment services were successful, acknowledging she was not qualified to evaluate Appellant for competency.

**{¶40}** The trial court addressed J.S. personally, questioning him on his understanding of the proceedings and his role in assisting in his defense. The court inquired of Appellant as to his ability to tell the difference between the truth and a lie, his knowledge of the legal process and his restoration to competency.  Via Judgment Entry of April 6, 2016, the trial court determined J.S. had been restored to competency, and was capable of understanding the nature and objectives of the proceedings and in assisting in his defense.

**{¶41}** In *In re D.L.*, Stark App. No. 2016 CA 00125, 2017-Ohio-2823, this Court held,

> While ideally it may have been more illuminating on the competency issue and the expressed "common sense" concerns to have secured a follow-up evaluation by Dr. Christensen, we hesitate to herein formulate a bright-line rule mandating this additional step, given the discretion we must afford to the juvenile court in addressing delinquency and juvenile competency matters.

> Accordingly, upon review, we find no abuse of discretion or violation of due process in the juvenile court's procedure and implicit determination that appellant was capable of understanding the nature and objective of the proceedings against him and of assisting in his defense. R.C. 2152.51(A)(1), *supra*.

**{¶42}** Based upon our review of the record, we find no abuse of discretion in the trial court's determination of J.S.'s competency herein.

**{¶43}** The second assignment of error is overruled.

{¶44} Appellant's adjudication entered by the Stark County Court of Common Pleas, Juvenile Division, is affirmed.

By: Hoffman, J.

Gwin, P.J.  and

Wise, John, J. concur